## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 15 |
| **POINT INVESTMENTS, LTD.**<br>**(IN LIQUIDATION)** | **Case No. 22-10261 (JKS)** |
| **Debtor in a Foreign Proceeding.**[1] | |
| **FTI GP I, LLC on behalf of FALCATA TECH INVESTMENT FUND I, L.P.,** | |
| **Plaintiff,** | **Adv. Proc. No. 23-____ (___)** |
| **v.** | |
| **POINT INVESTMENTS, LTD.,** | |
| **Defendant.** | |

## COMPLAINT

1.      Plaintiff FTI GP I, LLC (the "General Partner" or "Plaintiff") on behalf of Falcata Tech Investment Fund I, L.P. (the "Fund"), alleges for its complaint, based upon knowledge as to itself and its own acts, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

2.      This case is about chapter 15 debtor and defendant Point Investments, Ltd.'s ("Defendant's" or "Point's") clear and substantive violations of its agreements with Plaintiff.

3.      In particular, Point failed to make a payment required under the parties' Amended and Restated Exempted Limited Partnership Agreement, dated April 20, 2018 (the "Limited

---

[1] Debtor Point Investments, Ltd. (the "Debtor") is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 43769. The Debtor's registered office is located at Chancery Hall, 1st Floor, 52 Reid Street, Hamilton HM 12, Bermuda.

Partnership Agreement") and the Master Transaction Agreement, dated July 1, 2019 (the "Master Transaction Agreement").

4.      As a result of Point's failure to make the required payment, Point was designated as a "Defaulting Partner" under and in accordance with the Limited Partnership Agreement.

5.      As a Defaulting Partner, the Limited Partnership Agreement expressly provides that: (1) Point is no longer entitled to certain distribution and information rights; and (2) Point is required to pay certain expenses, fees and costs in connection with enforcement of the Limited Partnership Agreement that results from the Defaulting Partner's default.

6.      Despite this, Point continues to demand documents and assert alleged rights that it is not entitled to and threaten legal action if it does not receive such information.

## THE PARTIES.

7.      The General Partner is a Delaware limited liability company.  The General Partner's corporate headquarters are located in Houston, Texas.

8.      On information and belief, Defendant Point is a Bermuda exempted corporation in liquidation.  Point's registered office is located in Hamilton, Bermuda.

## JURISDICTION AND VENUE

9.      Section 1334 of Title 28 grants the United States District Court for the District of Delaware original jurisdiction over this adversary proceeding.  This action has been referred to this Court pursuant to 28 U.S.C. § 157(a) and the *Amended Standing Order of Reference*, dated February 29, 2012.

10.     This adversary proceeding is a non-core proceeding under 28 U.S.C. § 157(c).

11.     Venue in this adversary proceeding is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

12.    The legal predicates for the relief requested herein are 28 U.S.C. § 2201(a), 11 U.S.C. §§105 and 541, and Rule 7001 of the Federal Rules of Bankruptcy Procedure.

13.    A real and justiciable controversy presently exists between the parties, and speedy relief is necessary to preserve the parties' respective rights.

## FACTUAL BACKGROUND

### The Limited Partnership Agreement and the Master Transaction Agreement

14.    On April 20, 2018, the Limited Partnership Agreement was entered into by the General Partner and  Falcata Capital LLC (the "Initial Limited Partner").  A true and correct copy of the Limited Partnership Agreement is attached as Exhibit 1.

15.    On July 1, 2019, the Master Transaction Agreement was entered into by the Fund, the General Partner, Point, the Initial Limited Partner, *et al.*  A true and correct copy of the Master Transaction Agreement is attached as Exhibit 2.

16.    The Limited Partnership Agreement generally provides the rights, remedies and responsibilities of the entities involved with the Fund, including the General Partner and any limited partners.

17.    For example, Section 1.6 of the Limited Partnership Agreement provides that the General Partner is authorized and empowered on behalf of the Fund to, among other things, bring an "action, suit . . . or other proceeding."  *See* Exhibit 1, Section 1.6

18.    The Limited Partnership Agreement also provides that the Initial Limited Partner will no longer be involved with the Fund following the admission of the Limited Partner.  Section 1.8 of the Limited Partnership Agreement states:

> Immediately following the admission of the Limited Partner . . . the Initial Limited Partner shall cease to be a partner of the Fund and the Fund shall return the original capital contribution made by the Initial Limited Partner, who shall have no further rights or claims

against, or obligations as a partner of, the Fund. A Person shall be admitted at the Initial Closing as a limited partner of the Fund at the time that *(a)* this Agreement or a counterpart hereof is executed by or on behalf of such Person and a Subscription Agreement or a counterpart thereof is executed by or on behalf of such Person and by the General Partner on behalf of the Fund and *(b)* such Person is listed by the General Partner as the limited partner of the Fund on the Register.

19.     The Limited Partnership Agreement defines "Limited Partner" as: "the Person admitted as a limited partner of the Fund, which limited partner shall be listed in the Cayman Register, and shall include its successors and permitted assigns to the extent admitted to the Fund as limited partners in accordance with the terms hereof, in their capacities as limited partners of the Fund, and shall exclude any Person that ceases to be a Partner in accordance with the terms hereof."

20.     After the Limited Partner is admitted to the Fund, the Limited Partner has certain obligations, such as making regular Capital Contributions.   Section 5.2(d) of the Limited Partnership Agreement provides:

> Each Partner shall pay the Capital Contributions determined in accordance with the provisions of this Section 5.2(d) and specified in the relevant Drawdown Notice, as the same may be revised pursuant to Section 5.2(c), by wire transfer in immediately available funds to the account specified therein. The required Capital Contribution of each Partner shall be made no later than the Drawdown Date specified in such Drawdown Notice and shall equal such Partner's pro rata share (based on Capital Commitments of all the Partners), in each case up to an amount not to exceed such Partner's Remaining Capital Commitment.

21.     The Limited Partnership Agreement defines "Capital Contribution" as: "the capital contributed pursuant to a single Drawdown or the aggregate capital so contributed, as the context may require, by such Partner to the Fund pursuant to this Agreement . . . ."

22.     The Limited Partnership Agreement defines "Drawdowns" as: "the Capital Contributions made or to be made to the Fund pursuant to Section 5.2 from time to time by the Partners pursuant to a Drawdown Notice."

23.     The Limited Partnership Agreement provides the definitions of "Drawdown Date" and "Drawdown Notice" in Section 5.2(a), which states: "The General Partner shall provide each Partner with a notice of each Drawdown (a 'Drawdown Notice') at least 10 Business Days prior to the date on which such Drawdown is due and payable (the 'Drawdown Date'). Each Drawdown may be used for any purpose authorized or contemplated by this Agreement."

24.     The Master Transaction Agreement further provides that Point, as the Limited Partner, is responsible for Capital Contributions. *See* Exhibit 2, Sections 1.2, 1.3.

25.     The Master Transaction Agreement incorporates the Limited Partnership Agreement's definition of "Capital Contribution." *See* Master Transaction Agreement ("Capitalized terms used herein without definition have the meaning set forth in the [Limited Partnership Agreement] . . . .")

26.     The Limited Partnership Agreement also provides the procedure and remedies available to the General Partner in the event the Limited Partner fails to make a Capital Contribution. Section 5.4 of the Limited Partnership Agreement states:

> If the Limited Partner fails to make, in a timely manner, all or any portion of any Capital Contribution or any other amount required to be funded by the Limited Partner hereunder, and such failure continues for five Business Days after receipt of written notice thereof from the General Partner, or the Limited Partner purports to Transfer all or any part of its interest in the Fund other than in accordance with this Agreement (a "Default"), then the Limited Partner may be designated by the General Partner in its sole discretion as in Default under this Agreement (a "Defaulting Partner") and shall thereafter be subject to the provisions of this Section 5.4.

27.     Following designation of the Limited Partner as a Defaulting Partner, Section 5.4(d) of the Limited Partnership Agreement provides that the General Partner can, among other things, reduce the amounts distributable to the Defaulting Partner (that are attributable to Capital Contributions) as of the date of default by 50%, and withhold 100% of any future distributions that would otherwise be payable to the Defaulting Partner until the dissolution of the Fund.  Section 5.4(d) also provides that the General Partner can require that the Defaulting Partner remain fully liable for payment of its pro rata share of certain expenses as if the default had not occurred.

28.     Further, under Section 5.4(e) of the Limited Partnership Agreement, all remedies at law or in equity are available to the General Partner to pursue with respect to the Defaulting Partner's default, including initiating a lawsuit against the Defaulting Partner.

29.     Once a Limited Partner is designated a Defaulting Partner, the Limited Partner also loses certain rights and aspects of its role in the Fund that it was previously responsible for and/or entitled to.

30.     For example, Section 5.4(f) of the Limited Partnership Agreement provides that once a Limited Partner is designated a Defaulting Partner, the Limited Partner is not permitted to vote, consent, or provide a decision in any circumstance it was required or permitted to prior to default under the terms of the Limited Partnership Agreement.

31.     In addition, Section 5.4(d) of the Limited Partnership Agreement provides that once a Limited Partner is designated a Defaulting Partner, the Limited Partner will have no right to make Capital Contributions to participate in any Portfolio Investment.

32.     Further, under Section 5.4(d) of the Limited Partnership Agreement, to the extent permitted by law, a Defaulting Partner is no longer treated as a Partner for purposes of the below Sections of the Limited Partnership Agreement:

A.      Section 5.2 of the Limited Partnership Agreement, which is stated above and sets forth the procedures for payment of Capital Contributions, including timing of drawdowns and notice procedures.

B.      Section 8.1 of the Limited Partnership Agreement, which sets forth the procedures for maintenance of books and records.  Under Section 8.1, the books and records of the Fund are available for inspection and copying by the Limited Partner or its duly authorized agents and representatives, upon five Business Days' notice to the General Partner.

C.      Section 8.2 of the Limited Partnership Agreement, which sets forth the procedures for the auditing and reporting of the Fund's financials.  This Section requires that the General Partner make certain reports available to the Limited Partner at designated times.  Section 8.2(d) of the Limited Partnership Agreement also requires that the General Partner make commercially reasonable efforts to deliver to the Limited Partner information reasonably requested from time to time that is for any purpose reasonably related to the Limited Partner's interest in the Fund to the extent it does not impose undue cost or burden on the General Partner or the Fund.

D.      Section 8.3 of the Limited Partnership Agreement, which sets forth the requirement that the General Partner hold an annual meeting with the Limited Partner.

33.     Finally, under Section 5.4(e) of the Limited Partnership Agreement, the Defaulting Partner shall pay on demand all costs and expenses (including attorneys' fees and borrowing costs) incurred by or on behalf of the Fund in connection with enforcement of the Limited Partnership Agreement that results from the Defaulting Partner's default.

**Point Becomes the Fund's Limited Partner and Defaults Under the Limited Partnership Agreement and the Master Transaction Agreement**

34.    On April 20, 2018, Point became the Limited Partner of the Fund when it entered into an agreement to purchase and subscribe to an interest as limited partner in the Fund with a Capital Contribution of $1,000,000,000.00, which was accepted on behalf of the Fund by the General Partner.

35.    As the Limited Partner, Point agreed to be bound by the terms and conditions set forth in the Limited Partnership Agreement and the Master Transaction Agreement.

36.    On June 16, 2020, the Manager sent Point a Demand Letter requesting a Capital Contribution in the amount of $625,000 due on July 1, 2020 and attaching the corresponding Drawdown Notice (the "July Capital Contribution").

37.    Point did not provide the July Capital Contribution.

38.    On July 2, 2020, a representative of the Fund sent an e-mail to a representative of Point, reminding them that the due date of the July Capital Contribution had passed, and requesting tracking information in the event payment had been remitted, but was delayed.  A true and correct copy of the July 2, 2020 e-mail is attached as Exhibit 3.

39.    On August 4, 2020, the Manager sent Point a default letter (the "Default Notice") stating that Point had not paid the Capital Contribution by the required date (the "Default"), and, in accordance with Section 5.4(a) of the Limited Partnership Agreement, Point had five business days to cure the Default.  The Default Notice further stated that if Point failed to pay the Capital Contribution within five days from the date of the Default Notice, Point would be designated as in Default by the Manager, and would be a "Defaulting Partner and [would] be subject to any all of the rights and remedies afforded to the General Partner and the Fund under the [Limited

Partnership Agreement]."  A true and correct copy of the August 4, 2020 Default Notice is attached as Exhibit 4.

40.    Point failed to pay the Capital Contribution within five days of the Default Notice, and the Capital Contribution has never been paid.

41.    As a result, Point was designated as a Defaulting Partner on the expiration of the five day notice period.

42.    On September 16, 2020, the registered owner of Point's common shares, Spanish Steps Holdings Ltd., filed a petition in the Supreme Court of Bermuda seeking Point's wind up (the "Wind Up Petition").  The Supreme Court of Bermuda appointed Andrew Childe and Richard Lewis of FFP Limited and Mathew Clingerman of Krys & Associates (Bermuda) Ltd. as the Joint Provisional Liquidators on October 29, 2021.  On February 18, 2022, the Supreme Court of Bermuda granted the Wind Up Petition.

43.    Point filed this chapter 15 proceeding on March 29, 2022.  That same day, Point filed its Verified Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 (D.I. 3) ("Petition for Recognition").  This Court granted the Petition for Recognition on April 22, 2022 in the Order Granting Petition for (I) Recognition of Foreign Main Proceeding, (II) Recognition of Foreign Representatives, and (III) Related Relief Under Chapter 15 (D.I. 34).  Plaintiff did not receive notice of the Chapter 15 filing.

44.    Despite Point's designation as a Defaulting Partner, Point continues to seek information and seek to assert rights it no longer has and is no longer entitled to under the Limited Partnership Agreement.

## COUNT I:
### Breach of Contract – the Limited Partnership Agreement

45.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 44 as though fully set forth herein.

46.     Plaintiff and Point entered into the Limited Partnership Agreement whereby Point agreed to abide by the terms of the Limited Partnership Agreement.

47.     The Limited Partnership Agreement is a valid and enforceable agreement.

48.     Plaintiff has fully complied with all of its rights and obligations under the Limited Partnership Agreement.

49.     Under the Limited Partnership Agreement, Point, as the Limited Partner to the Fund, was required to, among other things, pay Capital Contributions.

50.     Point failed to pay the July Capital Contribution.

51.     Point failed to cure its failure to pay the July Capital Contribution within five days of receiving the Default Notice.

52.     As a result of Point's breaches of the Limited Partnership Agreement, Plaintiff has suffered and will continue to suffer damages.

53.     Accordingly, Plaintiff is authorized to and seeks damages in an amount to be determined at trial.

## COUNT II:
### Breach of Contract – the Master Transaction Agreement

54.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 44 as though fully set forth herein.

55.     Plaintiff and Point entered into the Master Transaction Agreement whereby Point agreed to abide by the terms of the Master Transaction Agreement.

56.     The Master Transaction Agreement is a valid and enforceable agreement.

57.     Plaintiff has fully complied with all of its rights and obligations under the Master Transaction Agreement.

58.     Under the Master Transaction Agreement, Point, as the Limited Partner, was required to, among other things, pay Capital Contributions.

59.     Point failed to pay the July Capital Contribution.

60.     As a result of Point's breaches of the Master Transaction Agreement, Plaintiff has suffered and will continue to suffer damages.

61.     Accordingly, Plaintiff is authorized to and seeks damages in an amount to be determined at trial.

## COUNT III:
### Declaratory Relief

62.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 44 as though fully set forth herein.

63.     There is an actual case and controversy between Plaintiff and Point regarding Point's status as a Defaulting Partner under the Limited Partnership Agreement.

64.     As set forth above, Point failed to pay the July Capital Contribution, failed to cure its failure to pay the July Capital Contribution within five days of receiving the Default Notice, and therefore was designated as a Defaulting Partner on the expiration of the five day notice period, pursuant to the Limited Partnership Agreement.

65.     Despite Point's status as a Defaulting Partner under the Limited Partnership Agreement, Point continues to seek information and attempt to assert rights it is no longer entitled to.

66.     Point filed the underlying chapter 15 case in this Court and sought recognition of the chapter 15 case as a foreign non main proceeding under 11 U.S.C. section 1517, and was granted such relief in this Court's order granting Point's petition for recognition of a foreign main proceeding and recognition of foreign representatives, dated April 22, 2022, without notice to Plaintiff, and is seeking to obtain rights and information in the chapter 15 case that Point is not entitled to under the Limited Partnership Agreement.

67.     As such, the Plaintiff is entitled to a judgment declaring that: pursuant to the terms of the Limited Partnership Agreement, Point is a Defaulting Partner and is therefore subject to all of the General Partner's actions to seek rights and remedies under the Limited Partnership Agreement in connection therewith, including, but not limited to:

     A.     Reducing amounts otherwise distributable to the Defaulting Partner (*see* Limited Partnership Agreement § 5.4(d));

     B.     Apply all amounts withheld to satisfy any and all amounts payable by the Defaulting Partner, including Fund Expenses and attorneys' fees (*see* Limited Partnership Agreement §§ 5.4(d); 5.4(e));

     C.     Charge the Defaulting Partner interest on the default amount (*see* Limited Partnership Agreement § 5.4(d)); and

     D.     Pursue all remedies at law or in equity available to the General Partner (*see* Limited Partnership Agreement § 5.4(e)).

68.     A declaratory judgment is necessary and useful in resolving the actual, substantial, and justiciable controversy that has arisen between the parties as set forth above.

69.     A declaratory judgment is necessary, appropriate and useful at this time under all the circumstances to declare that Point is a Defaulting Partner under the Limited Partnership Agreement.

70.     A declaratory judgment would further the public interest and considerations of practicality and of efficient judicial administration.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests entry of judgment in their favor and against Point as follows:

1.   An award of compensatory and exemplary damages as a result of the breach of contracts to the extent allowed under applicable law in an amount to be proven at trial;

2.   A judgment declaring Point a Defaulting Partner under the Limited Partnership Agreement and sanctioning all of the General Partner's rights and remedies in connection therewith; and

3.   Such other, further and different relief as this Court deems just and proper under the circumstances, including an award of fees and costs.

Dated: March 3, 2023

By: /s/ *Eric D. Schwartz*_____
Eric D. Schwartz (No.3134)
Daniel B. Butz (No. 4227)
Evanthea Hammer (No. 7061)
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, DE 19899
Telephone: (302) 658-9200
Email: eschwartz@morrisnichols.com
        dbutz@morrisnichols.com
        ehammer@morrisnichols.com

-and-

Paul Werner (*pro hac vice* admission pending)
A. Joseph Jay III (*pro hac vice* admission pending)
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
2099 Pennsylvania Avenue NW, Suite 100
Washington, D.C. 20006-6801
Telephone: (202) 747-1900
Email: pwerner@sheppardmullin.com
        jjay@sheppardmullin.com

-13-

Edward H. Tillinghast, III (*pro hac vice* admission
pending)
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
30 Rockefeller Plaza
New York, New York 10112-0015
Telephone:  (212) 653-8700
etillinghast@sheppardmullin.com